ELIJAH RAWLES v. THE STATE.

An indictment will not lie against the master, under the Act of May 11th, 1846, to prevent slaves from hiring their own time, or their owners from hiring them to other slaves, free negroes or mulattoes. (Hart. Dig. p. 784.)

Appeal from Travis.

*Turner & Sneed* and *Brewster & West*, for appellant.

*Attorney General*, for appellee.

LIPSCOMB, J. The appellant was indicted under the first Section of the Act of May 11th, 1846, for permitting his slave to go at large and hire her own time for more than one day in a week, and found guilty, and appealed to this Court.

The question of jurisdiction arises upon the construction of the Act above cited. The first Section, under which the indictment was preferred and is sought to be sustained, is as follows :

" That any owner or master of a slave or slaves, who shall
" hire such slave to any other slave or to any free negro or mu-
" latto, or shall suffer such slave to go at large upon a hiring
" of his own time, for more than one day in the week, except
" in Christmas holydays, or to act or deal as a free person
" within the State, shall be fined in a sum not exceeding one
" hundred dollars for every such offence." (Hart. Dig. Art.
2576.)

If the Section cited stood alone, there would be no doubt that the District Court, having general jurisdiction over all misdemeanors, could take jurisdiction. But the whole of what follows in the succeeding Sections, seems to be inconsistent

with such a construction. The structure of the whole Act is so exceedingly awkward, that it is not clear whether any effect could be given to it. The second Section makes it the duty of any Sheriff, Coroner, or Constable, knowing of any slave so going at large, &c., in violation of this Act, to arrest such slave, and authorizes any other person knowing of such violation to do the same, and take them before a Justice of the Peace, without warrant. The third Section enacts that if any Justice of the Peace shall receive satisfactory evidence or information that a slave or slaves are going at large or hiring their own time, within his county, contrary to the provisions of this Act, he shall immediately issue his warrant to appre- "hend and bring such offenders before him." What offender? who is to be apprehended? The Sections taken together show that it is to act upon the slave. The fourth Section enacts "that when any slave or slaves shall be brought before any "Justice of the Peace, under the provisions of this Act, said "Justice shall inquire into the facts; and if it shall appear that "such slave or slaves have been going at large or hiring, con- "trary to any of the provisions of this Act, he shall commit "such slave to the County Jail, there to remain until discharged "as hereinafter provided." The fifth Section enacts "that any "slave, apprehended or committed under this Act, may be re- "leased on application made by the owner of the same, at any "time before the said slave is sold under the provisions here- "inafter provided, upon the payment of all cost and the fine "that may have accrued or be assessed against the same." To what does the same refer? Undoubtedly to the slave confined or arrested. The fine is, then, to be assessed against the slave, which fine is to be paid by the master, together with all cost, before the slave can be released. The sixth Section is more conclusive as to whom the preceeding is to act upon. It en- acts that it shall be the duty of the Justice of the Peace, com- mitting any slave under this Act, to report the same to the County Court at its next session, *also the amount of the fine*

*and costs assessed in each case.* It would be singular indeed, if the slave was to lie in jail until the master should be indicted and fined, and then stranger still, if after such trial and fine in the District Court, it should be made the duty of the Justice of the Peace to report such fine to the next Term of the County Court. The seventh Section makes it the duty of the County Court to order the Clerk thereof to advertise the said slave, with a particular description, at three or more public places in the county, and to publish it also in some newspaper, containing the cause of his commitment and the name of his owner if known. The eighth Section directs that at the next succeeding Term after the above notice is given, if the slave is not proven away by his owner, the Court shall order the said slave to be sold by the Sheriff, after giving the notice in the Section contained ; when the slave shall be sold, unless the owner shall prove him away under the provisions of this Act. The ninth Section directs that the money arising from the sale shall, after paying the costs of apprehending, trying, committing, advertising and five per cent. to the Sheriff for selling, and all other costs necessarily accruing, be paid into the County Treasury. The fact that the cost of *trying* is, in this Section, to be paid, shows that the trying must be by the Justice of the Peace, as it is in connection with other costs incurred by the proceedings of that functionary. The tenth Section makes provision for any person claiming to be the master of such slave, coming forward within five years and proving to the satisfaction of the County Court that he was the master of the said slaves, he shall receive an order on the County Treasury for the amount of the sale, after deducting the fine, costs, and charges, &c., &c.

When the whole Act is construed together, there cannot be a reasonable doubt that the arrest of the slave, fine, commitment, and sale of the slave, was designed by the Legislature to be a proceeding in the nature of a *libel* of the slave, to act upon him and to be a lien until the master paid the fine asses-

sed and costs and charges.   How far such proceedings would be valid under our Constitution, in depriving the owner of his property and condemning him to pay the fine and costs, before he could obtain his services, without having any notice of the trial, is not a question before us, and therefore it would be improper to say anything about it further.   It is very unfortunate that, on a subject of so much interest and importance, in regulating and keeping under proper discipline our slaves, there should be such imperfect legislation.   We are of the opinion that the motion in arrest of judgment ought to have been sustained by the Court below.   The judgment is therefore reversed and the prosecution dismissed.

Reversed and dismissed.